UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATASHA K.-R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 21 C 932 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Natasha K.-R. seeks to reverse the final decision of the Acting Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Acting Commissioner moves for summary judgment affirming the decision. For the reasons that follow, Plaintiff's request for reversal and remand is denied, and the Acting Commissioner's motion for summary judgment [22] is granted.

## BACKGROUND

On May 4, 2019, Natasha (then thirty-eight years old) was involved in a motor vehicle accident and fractured her left wrist and two bones in her right ankle. Two days later, Michael Dorning, D.O., an orthopedic surgeon, performed an open reduction internal fixation ("ORIF") of Natasha's right distal tibia and fibula and placed a short arm cast on her left upper extremity.[1] Ultimately, Natasha's right tibia fracture did not heal. In November 2019, 27 weeks post ORIF, x-rays showed the tibial fracture line remained visible and two screws had failed. (R. 369, 373). At that time, Dr. Dorning characterized the status as "delayed healing" and informed Natasha that

---

[1] "ORIF, open reduction and internal fixation, is a type of surgery used to fix broken bones, using screws, plates, rods or pins to hold the broken bone together." *Olson v. Astrue*, 2012 WL 6861346, at *1 n.2 (D. Minn. Dec. 19, 2012).

there was a "possibility of a repeat surgery to be performed." *Id*. at 369. A February 2022 CT image showed a healed fibular fracture but a nonunion of the right distal tibia with broken hardware. *Id*. at 385. In March 2022, Dr. Dorning wrote that his "only recommendation is a removal of the hardware of the right distal tibia with repeat ORIF of the right distal tibia with bone graft." *Id*. at 399.

On May 4, 2020, Natasha cancelled a second ORIF set for May 12, 2020 because she did "not want to have the surgery right now due to the COVID 19 restrictions. She wants her husband to be able to be there with her." (R. 391). On June 24, 2020, Natasha continued to postpone scheduling the ORIF because she did "not want to have surgery until her husband can accompany her." *Id*. at 390. In late July 2020, Natasha asked "if there are still visiting restrictions if she decided to have surgery at the hospital." *Id*. at 387. At the administrative hearing in October 2020, Natasha had not undergone the second ORIF. *Id*. at 42.

On June 29, 2019, Natasha filed applications for DIB and SSI, alleging disability as of May 4, 2019 due to ankle problem, hand/wrist/arm problem, broken bones in left wrist and right ankle, and musculoskeletal problem. Regarding her education, Natasha graduated from high school. She lives in a house with her children's grandmother and aunt. She has a work history dating back to 2008 performing various jobs, including cashier/stocker and warehouse worker.

On October 28, 2020, the ALJ issued a decision concluding that Natasha was not disabled under the Social Security Administration's five-step process. (R. 84-92). First, the ALJ found that Natasha had not engaged in substantial gainful activity since May 4, 2019, the alleged onset date. *Id*. at 86. Second, the ALJ concluded that Natasha suffered from the severe impairment of fracture of the right tibia, non-union. *Id*. The ALJ determined that the left wrist and right fibula fractures sustained in the same automobile accident each healed within the twelve months of onset and were

2

non-severe. *Id*. at 87. The ALJ further determined that Natasha's body mass index may have surpassed the threshold for obesity during the period in question. *Id*. He stated that he considered the impact of her weight in assessing the totality of her alleged impairment in assessing impairment severity, listing level severity, and the residual functional capacity ("RFC"). *Id*. Third, the ALJ concluded that Natasha's impairment did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1, including Listing 1.06. *Id*. at 87. The ALJ then determined that Natasha had the RFC to perform a full range of sedentary work. *Id*. at 87-91. Fourth, the ALJ concluded that Natasha was unable to perform her past relevant work as a house cleaner, hair stylist, cashier, manager, fast food operations manager, recreational aide, and a plastic forming machine operator as actually or generally performed. *Id*. at 91. Fifth, based upon Natasha's age, education, work experience, and RFC, the ALJ applied Medical-Vocational Rule 201.28 (the "Grid"), which directed a finding that Natasha is not disabled under the Social Security Act. *Id*. at 92. The Appeals Council denied Natasha's request for review. *Id*. at 1-6.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education,

3

and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Natasha raises one argument in support of her request for reversal and remand: the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly evaluated the opinion of her treating orthopedic surgeon, Michael Dorning, D.O., who indicated that Natasha had nonexertional limitations that are not reflected in the ALJ's RFC. Because the ALJ's finding that part of Dr. Dorning's opinion was unpersuasive is supported by more than a mere scintilla of evidence and a reasonable mind can accept this evidence as adequate to support the conclusion, the Court affirms.

4

The RFC is the "most physical and mental work the claimant can do on a sustained basis despite her limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). In an RFC assessment, an ALJ is only required to include limitations that are supported by the medical record. *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). Moreover, "[m]edical opinions may be discounted if they are inconsistent with the record as a whole," including the physician's own treatment notes. *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021); *Pavlicek v. Saul* 994 F.3d 777, 781-82 (7th Cir. 2021).

Given Natasha's filing date, the ALJ's evaluation of the medical opinion evidence was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).

Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ must explain how he considered the factors of supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). In assessing supportability, "[t]he more

5

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

On September 10, 2019, Dr. Dorning completed a Physical Assessment form. (R. 361-62). On this form, Dr. Dorning listed Natasha's diagnosis as status post "4½ months ORIF right tibia." *Id*. at 361. He opined that due to her right tibia condition, Natasha requires the use of a walking boot. *Id*. According to Dr. Dorning, Natasha could walk or stand for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, lift and carry less than ten pounds frequently and ten pounds occasionally, and had no limitations in reaching, handling, or fingering. *Id*. He noted that Natasha could walk one city bock without rest or significant pain. *Id*. Dr. Dorning also opined that Natasha's right tibia injury caused the following nonexertional limitations: (1) often interfered with the attention and concentration required to perform simple work-related tasks; (2) she would need to take two unscheduled breaks of 25 minutes each during an 8-hour workday; (3) she would need to recline during the workday in excess of the typical morning break, lunch, and afternoon break; and (4) she would be absent from work three or four times a month. *Id*. at 361-62.

The ALJ partially credited Dr. Dorning's September 2019 opinion, which found that Natasha could perform sedentary exertional work with additional nonexertional limitations. The ALJ found persuasive Dr. Dorning's assessment that Natasha retained the ability to perform sedentary exertional work. (R. 90-91). The ALJ explained that these opinions were well-supported

by Dr. Dorning's treatment notes and consistent with the record as a whole. *Id*. at 91. The ALJ noted that Dr. Dorning listed the need to wear a supportive boot as the only functional limitation Natasha would have in a work environment on a sustained basis. *Id*. He further noted that Natasha testified that she continues to wear a Bledsoe boot for any weight-bearing activity. *Id*. Relying on Dr. Dorning's opinion and subsequent medical records showing Natasha's right tibia did not heal, the ALJ found that Natasha's "lingering injury" of a nonunion fracture of her right tibia supported a limitation to sedentary level work. *Id*. at 90-91. Natasha does not challenge this aspect of the ALJ's decision.

Natasha argues that the ALJ erred by not incorporating additional nonexertional limitations relating to her tibia fracture into the RFC. Specifically, Natasha contends that the ALJ should have accepted Dr. Dorning's opinions that: (1) her ankle would "often" interfere with her attention and concentration; (2) she required additional and unscheduled breaks; (3) she needed to recline or lie down throughout the workday; and (4) she would be absent three to four times per month. The vocational expert testified that a hypothetical individual with Natasha's sedentary limitation would be precluded for working if that individual also had to be absent more than one and half days per month, needed two unscheduled fifteen-minute breaks per day in addition to regularly scheduled breaks, or needed to recline or lie down during the workday on an unscheduled basis. (R. 47-49).

The ALJ determined that Dr. Dorning's opinions concerning Natasha's nonexertional limitations were not persuasive. (R. 90). The ALJ gave two reasons for rejecting Dr. Dorning's recommended nonexertional restrictions. Regarding the first reason, the Court agrees with Natasha that the ALJ's discounting of the nonexertional restrictions in Dr. Dorning's opinions as temporary is not sound, given the absence of evidence that Natasha's tibia fracture healed. The ALJ's second reason—the lack of support between Dr. Dorning's opinion and his own treatment

7

notes—is sufficient and an independent basis to support his discounting of Dr. Dorning's nonexertional restrictions.

First, the ALJ pointed out that "Dr. Dorning made these opinions little more than four months after the original injury, and these opinions are not indicated to be predictive of how [Natasha] might perform today or in the future." (R. 90). The premise underlying the ALJ's analysis is that Natasha's fractured tibia was temporary and would not cause significant functional limitations on a continuing basis. The Commissioner defends the ALJ's first reason, arguing that the "ALJ's consideration that these constituted temporary or short-term limitations as Natasha continued to heal was a valid consideration." Doc. 23 at 8. The problem is that the ALJ's assumption is unsupported by the record; it is undisputed that Natasha's right tibia fracture failed to heal. Moreover, the ALJ found unpersuasive the opinions of the state agency consultants in September and December 2019 that Natasha's fractures were all likely to heal within the twelve months after they occurred. (R. 90). The ALJ noted that these opinions were reasonably based on the medical evidence available at the times when the opinions were made, but "new evidence indicates that [Natasha']s fractured tibia has not healed and additional surgery is recommended to revise the initial repair." *Id*. It makes no sense for the ALJ to partially discount Dr. Dorning's September 2019 opinion on the basis that Natasha would continue to heal but discount the state agency physicians' September and December 2019 opinions because subsequent evidence indicated that Natasha's fractured tibia did not in fact heal. Therefore, this is an insufficient basis to support the ALJ's conclusion that Dr. Dorning's opinions as to Natasha's nonexertional limitations were not persuasive.

However, the other reason cited by the ALJ for rejecting the nonexertional limitations in Dr. Dorning's opinion is sound and adequately supports his conclusion that Natasha was restricted

8

to sedentary exertional work without additional limitations. The ALJ explained that Dr. Dorning's nonexertional limitation opinions were "not supported by Dr. Dorning's own medical treatment notes." (R. 90). The Court concludes that this reason alone amounts to substantial evidence to reject Dr. Dorning's opinion about Natasha's nonexertional restrictions. *Pavlicek*, 994 F.3d at 782 (conflict between treating physician's report and his own treatment notes is an "independent basis for discounting" the opinion); *Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021) (ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions.").

The ALJ addressed each nonexertional limitation proposed in Dr. Dorning's opinion. (R. 90). The record supports the ALJ's conclusion that there was no evidence in Dr. Dorning's treatment records, including Natasha's own reports, any clinical findings, or his instructions, to justify his restrictions. First, the ALJ reasoned that there was no report in Dr. Dorning's records that Natasha was having attention or concentration difficulties either before or after the September 2019 opinion that would support a limitation that she would often have interference with attention and concentration. *Id*. In fact, in August 2019, Natasha reported that she had no difficulty with concentration and could pay attention for a "long time." *Id*. at 219. Thus, the ALJ reasonably found that this attention/concentration limitation was inconsistent with the record as a whole. Next, the ALJ explained that there was "nothing in Dr. Dorning's clinical records, which indicate he expected or recommended that [Natasha] would take additional, unscheduled breaks, or that she would need to lie down or recline during the day." *Id*. at 90. Natasha testified that she needs to lie down mostly all day or elevate her leg due to swelling in her right foot, but Dr. Dorning repeatedly noted that Natasha had no swelling in her right lower leg. *Id*. at 41-42, 346, 369, 398, 405. And as the ALJ noted, the medical records "do not indicate any instructions to (or documentation that [Natasha] feels the need to) elevate her leg or lie down for hours out of the

9

day." *Id*. at 89; *see Anders v. Saul*, 860 F. App'x 428, 432 (7th Cir. 2021) ("[T]he ALJ observed that nothing in the record indicated that a treatment provider ever recommended that Anders elevate his legs at all."). Finally, the ALJ stated that "Dr. Dorning made no observations or medical findings in his clinical records that would support or explain that he expected [Natasha] would have three or four absences a month." (R. 90).

The ALJ was entitled to discount Dr. Dorning's due to lack of support in his own medical records for the specific nonexertional limitations that he assigned. *Pavlicek*, 994 F.3d at 781; *Fair*, 853 F. App'x at 21. Moreover, Dr. Dorning provided no explanation or reference to specific medical findings in the Physical Assessment Form that supported his nonexertional limitations. (R. 361-62). An ALJ may properly discount an opinion that is conclusory and does not provide support for its restrictions. *See Cervantes v. Kijakazi*, 2021 WL 6101361, at *3 (7th Cir. 2021) (no error in ALJ discounting treating physician's opinion where the "cursory" RFC Questionnaire he completed provided little explanation or citation to relevant medical findings supporting its conclusions); *Kuykendoll v. Saul*, 801 F. App'x 433, 437 (7th Cir. 2020) (ALJ reasonably discounted treating psychiatrist's opinion when he "said nothing" to explain his suggested limitations); *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Thus, any error regarding the faulty presumption about the temporary nature of Natasha's tibia fracture is harmless and does not deprive the ALJ's opinion assessment of the support of substantial evidence. *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) ("[A]ny error here was harmless given the other reasons the ALJ cited for discounting Dr. Callier's opinions.").

Natasha argues the ALJ failed to identify any contradictory treatment notes or clinical observations. Doc. 17 at 11. But the ALJ discounted the nonexertional restrictions in Dr. Dorning's opinion because they were not supported by his own treatment notes, meaning he was

10

not required to support his decision based on contradictory treatment notes. Natasha further contends that in reaching his conclusion that Dr. Dorning's opinions lacked internal support, the ALJ "overlooked the debilitating effect of Natasha's pain on her functioning capacity."[2] *Id*. at 12. Contrary to Natasha's assertion, the ALJ did not ignore pain evidence that supported Dr. Dorning's opinion. In assessing Natasha's allegation of disabling pain, the ALJ considered evidence from her Function Report, testimony, and medical records. The ALJ noted Natasha's allegation that she has some degree of pain in her ankle all the time, and the pain is made worse by standing or walking. (R. 88). The ALJ also noted Natasha's testimony that she can only stand with the supportive boot for approximately three minutes and can only walk for four to six minutes at a time. *Id*. at 88, 89-90. The ALJ acknowledged that the "records indicate some complaints of pain, but not an incapacitation due to the condition." *Id*. at 89. He correctly noted that the "record also does not document an inability to walk more than 4-6 minutes, or stand longer than 3 minutes." *Id*. at 89-90. The ALJ found that Natasha's unhealed broken tibia restricted her to sedentary work, which accommodated her subjective complaints of pain. *Id*. at 90-91.

In support of her argument, Natasha points to her continued use of a walking boot and Dr. Dorning's prescription of pain medications into May 2020. Doc. 17 at 12-13. Natasha contends that this evidence supports Dr. Dorning's nonexertional limitation findings. But she fails to explain why this evidence justified the specific additional limitations Dr. Dorning identified. Importantly, the ALJ did not determine that Natasha has no limitations or pain. Rather, he disagreed that her pain limited her to the extent she claims, and supported his position with more than a scintilla of evidence. The ALJ explained, "This is not to suggest that [Natasha] is not impaired by her lingering injury. [Natasha's] nonunion fracture is a severe, medically-

---

[2] Natasha does not challenge the ALJ's subjective symptom assessment as patently wrong.

11

determinable impairment. However, the functional limitations caused by it are accommodated by the restriction to sedentary exertion" work. (R. 90). Thus, the ALJ determined that limiting effects of Natasha's "lingering injury" were not as severe as she claim. *Id*.

Moreover, the ALJ considered evidence of Natasha's pain medication, walking boot, and treatment, and found that the record did not support the severity of the pain she alleged. The ALJ discussed that although Natasha testified that she remains in a supportive boot, the medical records indicate that she has been able to bear weight on her injured right leg with the support of a Bledsoe boot for approximately the past year. (R. 88, 90). Further, the ALJ noted that the "medical records indicate that [Natasha] was diligent about requesting refills of her pain medications." *Id*. at 89. The ALJ also considered Natasha's conflicting testimony that her pain medication does not provide much relief and "she cannot tell much difference when she takes the medication." *Id*.

In addition, the ALJ considered that Dr. Dorning recommended a second ORIF surgery in March 2020, but Natasha declined to undergo the procedure through the time of the hearing in October 2022 due to her "choice, preference, and priorities." (R. 89); *see* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *8 (March 16, 2016) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis [of failing to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). In particular, the ALJ considered Natasha's testimony that a second surgery had been delayed once due to COVID-19 restrictions but then postponed at her request because the six-day post-surgery recovery time in the hospital would keep her away from her ten-year-old son too long. (R. 42-43, 89). The ALJ further considered that the records indicate Natasha was contacted in May 2020 to re-schedule the surgery, but she declined because her husband could not be in the hospital with her due to COVID-19

restrictions. *Id*. at 89, 391. The ALJ reasonably concluded the Natasha's postponement of recommended treatment weighed against her allegations of debilitating pain with no relief from medication. SSR 16-3p, 2016 WL 1119029, at *8 ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); *Frank R. v. Kijakazi*, 2021 WL 4264386, at *10 (N.D. Ill. Sept. 20, 2021) ("it was reasonable for the ALJ to conclude that plaintiff's failure to follow through on the recommended evaluation and surgery undermined his contention that his knee impairment meaningfully limited his ability to work.").

In sum, the ALJ gave a valid, substantiated reason for rejecting the nonexertional limitations assessed by Dr. Dorning—lack of support in his treatment notes. Natasha points to no evidence in the record supporting Dr. Dorning's proposed nonexertional limitations that the ALJ failed to consider. Natasha simply disagrees with the weight afforded to the evidence analyzed by the ALJ, which is not an adequate basis for reversal and remand. Although Natasha was eventually diagnosed with a nonunion fracture of her right tibia, she cites no post-diagnosis medical records or opinion supporting that her unhealed tibia would often interfere with her attention and concentration, she would require additional breaks, she would need to recline or lie down during the workday, or she would need three to four work absences per month. It was Natasha's burden to produce medical evidence supporting a disability, but she failed to carry that burden by identifying evidence in the record corroborating the nonexertional limitations identified by Dr. Dorning. *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (claimant "bears the burden to prove she is disabled by producing medical evidence"); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [claimant's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work"). Thus, the

13

ALJ did not err in evaluating the opinion of Dr. Dorning and determining that nonexertional limitations were not warranted here.

## CONCLUSION

For these reasons, the Court denies Plaintiff's request for reversal and remand [17], grants the Acting Commissioner's motion for summary judgment [22], and affirms the ALJ's decision.

**SO ORDERED.**

Dated: September 1, 2022

                                                Sunil R. Harjani
                                                United States Magistrate Judge